## W. SCOTT v. W. H. CHILDERS.

Decided October 25, 1900.

**1. Practice on Appeal—Bill of Exceptions in Conflict with Statement of Facts.**

Where, on appeal, the bill of exceptions shows that certain testimony was admitted on the trial below, but the contrary appears from the agreed statement of facts in the case, no error is shown as to the admission of such testimony.

**2. Deed in Escrow—Title of Cattle Not Passing by Delivery.**

Where a deed conveying both land and cattle was delivered to a third person in escrow, and was not to take effect until the purchaser had complied with certain conditions, a delivery of the cattle to the purchaser did not pass the title until the conditions had been fulfilled, unless they were waived. See the opinion for charge held not to give too much prominence to such proposition.

**3. Damages for Levy on Property—Indemnity Bond for Officer—Charge.**

Where defendant was sued for damages resulting from an attachment levy made at his instance on plaintiff's property, he can not complain that there was no verdict against the officer (jointly sued with him) who made the levy and to whom he had given an indemnity bond, nor of error in the charge in stating the measure of damages as against the officer, where the measure of damages as against himself was correctly given.

**4. Same—Measure of Damages.**

Where an attachment was levied on personal property, and the owner recovers it (as by purchase at the sale under the levy) for less than its value, such facts may be shown in mitigation of damages for an unlawful levy; but the rule that the value of the property is the measure of damages was properly applied where a receiver had been appointed for the owner, and the attachment creditor was still seeking, in the receivership proceedings, to establish the validity of his levy, and to prevent the proceeds of the sale from being applied therein to the owner's benefit.

APPEAL from Hill. Tried below before Hon. J. M. HALL.

*Matlock, Miller & Dycus* and *Nelson Phillips,* for appellant.

*Wear, Morrow & Smithdeal, A. P. McKinnon,* and *L. A. Carlton,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—The appellee, W. H. Childers, was engaged in the dairy business at Hillsboro. The dairy property consisted of about twenty acres of land and thirty cows with their calves. Childers had bought this property from G. H. Vaughan, and had given his notes, aggregating about $5000, for part of the purchase money. The notes were secured by a lien on the property. Vaughan owed W. S. Heard a note for $1044, and E. M. Cox and another were sureties on said note. The Childers notes were put up with Heard as collateral to further secure the note for $1044. Vaughan also owed a Hillsboro bank $4000, and the Childers notes were collateral security for said debt, as well as the Heard debt. In November, 1896, Childers made a contract to sell the dairy property to T. P. Weathered. It is not clear whether Weathered was buying for himself and Vaughan, or for Vaughan alone. No title papers passed, but Vaughan and Weathered took charge of the property and ran the business in their own names.

On February 12, 1897, Childers conveyed the property to Vaughan alone, but it seems that the deed of conveyance was not delivered to Vaughan, but was deposited with one Word to hold until Vaughan had complied with certain conditions. The preponderance of the evidence appears to be that Vaughan never complied with the conditions, and that the deed was never delivered, and that the agreement between Vaughan and Childers was that the title should not pass until the conditions were complied with. On February 16, 1897, Vaughan sold and conveyed the property to H. C. Weathered, who took possession. Vaughan testified that Weathered knew the facts concerning his title, but Weathered denied having such knowledge. The appellant, W. Scott, brought suit in the District Court of Tarrant County against H. C. Weathered and others, and caused a writ of attachment to be issued in said suit, and on April 24, 1897, had the same levied on all the dairy property, both real and personal, as the property of H. C. Weathered, who was then in possession of same under his purchase from Vaughan.

On May 4, 1897, E. M. Cox, one of the sureties on Vaughan's note to Heard, brought suit in the District Court of Hill County against Vaughan, Childers and wife, Heard, Word, the Hillsboro bank, Scott, and the sheriff who levied the attachment and who was then in possession of the property levied on. He alleged the facts above stated; asserted that the lien given on the attached property by Childers was entitled to priority over Scott's lien; claimed that, as Vaughan's surety, he had a right to have Vaughan's debt to Heard paid out of said property in preference to Scott, and asked for the appointment of a receiver to take charge of the property. Heard filed a cross-bill in this suit, and prayed for like relief. One Frazier was appointed receiver, and took charge of the property and sold the cows and calves under an order of the court for the sum of $657. Scott answered in this suit, and claimed that the District Court of Hill County had no jurisdiction to take the property by a receiver, as the same was in custodia legis by virtue of the levy of his attachment issued out of the District Court of Tarrant County, and sought to vacate the receivership. He further answered and asserted that the property levied on by him belonged to H. C. Weathered and was subject to his attachment; that if the lien given by said Childers on said property was valid, it was entitled to priority over his lien only as to the land, and not as to the cattle, as the Childers lien had never been filed as a chattel mortgage; that Cox had never paid the Heard note, and that the bank and Heard held other security, which he asked to be exhausted first. He also pleaded in reconvention for the value of the cattle taken by the receiver. This suit is still pending.

On September 11, 1897, Childers brought this suit in the District Court of Hill County against Scott and the officer who levied the attachment and the sureties on his official bond for the value of the cattle seized under Scott's attachment against H. C. Weathered. Scott answered and claimed that the cattle were the property of Weathered, and not the property of Childers, and were subject to the levy. He

also pleaded the facts above stated concerning the Cox suit as a bar to Childers' suit, and contended if the said facts did not constitute a complete defense, that as he had been deprived of the benefit of his levy and the property levied on was about to be applied to Childers' use, the amount so applied should be considered in mitigation of the damages. There was a trial by jury and a verdict and judgment for Childers against appellant alone for $1231.35.

The appellant contends that the trial court erred in permitting W. C. Wear, Esq., one of Childers' attorneys, to state that when Word, who held the deed made by Childers to Vaughan, brought the deed to him after the institution of this suit, he, Word, said that the deed was the one left with him by the parties thereto. The bill of exceptions shows that this testimony was admitted, but the contrary appears from an inspection of the statement of facts, which was agreed to by the parties. In this condition of the record no error is shown. Ramsey v. Hurley, 72 Texas, 194; Wiseman v. Baylor, 69 Texas, 67.

The court, in the general charge, submitted the law upon the issue arising from the deposit of the deed from Childers to Vaughan with Word, to be held by him in escrow, in a manner not complained of by the appellant, and at the request of the appellee gave a special charge on this issue to the effect that if the cattle were delivered by Childers to Vaughan in pursuance of the deed, and that if it was agreed between them that the title to the cattle would not pass until the conditions, if any, for which the deed was placed in escrow with Word had been complied with, then the title would not pass, notwithstanding the delivery of the cattle. The court further charged the jury, in response to a question propounded by them, that "the title to personal property would pass by delivery unless you believe from the evidence that it was the agreement by and between the parties to the contract that there was some condition to be performed before the title should pass, and that said condition had not been performed, or that if a delivery of said personal property had been made, that said delivery, if any, was made with the intention to waive the condition, if you believe from the evidence that there was any such condition."

The appellant objects to these special charges on the ground that they give too much prominence to the proposition that the delivery of the cattle would not pass title, if there was an agreement that it should not pass until certain conditions were complied with. It is clear, as a matter of law, that the delivery would not have the effect to pass the title to the cattle from Childers to Vaughan, if there was an agreement between them that the title should not pass until Vaughan had complied with certain conditions, and we do not think that the charges under consideration give unnecessary prominence to Childers' theory on this issue. Indeed, the appellant's theory is made as prominent and presented as fairly by the charges objected to as is the theory of his opponent, and this issue, being the turning point of the case on the question of title, should have been fully presented. The charges are not subject to the objection that they require the jury to find that

Vaughan must have been entitled to the deed before the title to the cattle would pass. The cattle were conveyed by the deed, and if the deed was not to be delivered to Vaughan until he had complied with conditions agreed on with Childers, and the title to the cattle was not to pass until he had fulfilled the conditions, then the title did not pass by the mere delivery of the cattle, and this, we think, was the effect of the charges. There is no conflict between the main charge and the special charges.

The court charged the jury that if they found against the sheriff and his sureties, the measure of damages would be the deterioration in the value of the cattle, and the value of the use of the cattle, during the time the same were held by the sheriff under the attachment. In a subsequent paragraph of the charge the court in effect informed the jury that the plaintiff, Childers, did not ask for a verdict against the sheriff and his sureties, and instructed the jury to find in their favor. The court then charged the jury that, if they found against the appellant, the measure of damages would be the market value of the property seized at the date of the levy, with interest at 6 per cent per annum from that time. The appellant complains that the charge on the measure of damages is conflicting. This may be true, but as there was no recovery against the sheriff and his sureties, appellant was not injured, if the court gave the true measure of damages in case of a finding against him. Appellant can not complain that there was no verdict against the officer levying his attachment, and it was immaterial to him how or when the sheriff and his sureties were dismissed from the case. The appellant had given an indemnity to the sheriff, and had directed the levy, and the sheriff was asking, and was entitled to, judgment over against appellant in the event of a recovery against him.

We now approach the most difficult question in the case, viz., whether the court gave the true measure of damages in the charge to the jury. It was formerly the rule in this State that when a plaintiff in attachment levied on personal property, and the owner of the property thereafter recovered the same for less than its value, such fact could not be considered in mitigation of the damages. Schoolher v. Hutchins, 66 Texas, 324; Hart v. Blum, 76 Texas, 113; Casey v. Chaytor, 5 Texas Civ. App., 385. This rule, however, no longer prevails, and the law is now distinctly announced to be to the contrary. Fields v. Munster, 11 Texas Civ. App., 431; Munster v. Fields, 89 Texas, 102; Scott Grocery Co. v. Kelly, 14 Texas Civ. App., 136. In view of the authorities cited, it is not necessary to enter upon a discussion of the question here. We accept the doctrine laid down in the latter cases, and if the appellant has a case that comes within the rule there stated he must prevail. It may be that if the receivership case had been settled and the proceeds of the sale of the cattle had been applied to the use of Childers, in the satisfaction of his debts to Heard and the bank, the rule announced in the case of Fields v. Munster, supra, would apply in full force to this case. But the suit is still pending, and the appellant appears to be vigorously contesting the right of his opponents therein

to such application of said funds; and, if some of the defenses pleaded by him are sustained by proof, he may be successful in said suit and secure the benefits of his levy on said cattle. The proceeds of the sale of said cattle have not been, and may never be, applied to appellee's use. The appellant levied on cattle, as the property of his debtor, which the jury has found belonged to Childers. When this was done, appellee's right of action accrued. That the attached property may hereafter, at the suit of the creditors of Childers, be applied to the satisfaction of their demands, to the exclusion of appellant's claim, was defensive matter, and it was appellant's duty, if he desired to avail himself of it, to interpose such action as would mature and render available his defense. This he did not do, and we conclude that the trial court did not err in holding that the measure of damages was the value of the property taken.

The appellant complains that the verdict of the jury is contrary to the evidence. We find that the evidence was conflicting on some material points, but that it is sufficient to warrant the verdict. The material facts of the case appear in our statement of the case above, and it is not necessary to repeat them here.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.